Judge Robertson,
delivered the Opinion of the Court.
This is a suit in chancery by Brown vs. Humphreys, Price and Crocket. Brown states in his hill, that on the 9th of December, 1819, he sold to Crocket a house and lot in Nicholasville, to which he held the equitable title, and for which he took Crocket’s notes without any security; that on the 5th of April, 1821, he gave to Crocket an order for the title; on the holder of it; intending not to waive his equitable lien for the purchase money; which still remained unpaid; that on the 17th of April, 1821; Crocket assigned this Order to Humphreys, who,shortly afterwards obtained a deed; that Humphreys held the property in pledge fora debt claimed by him from Crocket, and.that the debt had been discharged sometime after the obtainment of the legal title; that in 1-825, Crocket mortgaged the property to Price; and that Brown had obtained a judgment against Crocket for $1000, the balance due on the purchase, and issued an execution on it, which was returned “no property.” On these allegations the bill prays á decree to subject the property to the payment off Brown’s debt.
JfheH^rs"'er pvireys.
Bill taken for confessed nonresident?
without tfoUpe',
Humfiiirfeys shoilld look to if”3 gfty, against brocket havins recosved the order, held it up for several years, without any proof of Mason’s refusal or inability to pay, notice to Crocket, that the - order was not paid.
*393 Humphreys, in his answer, denies that he held the legal title as a security for money, but says that Crocket owed him about $1600, and agreed to let him have the order for the title to the house and lot, in cohsideration of that debt, without any agreement as to price; that'shortly after the order was drawn, Crocket stated that the house was worth more thán $1600, and thati'f he (Humphreys) should keep if, he must pay him the difference between that sum and the real value; that he then agreed that Crocket might have the property again if he would pay the debt; that Crocket drew an order, in his favor, on John T. Mason, for the amount of the debt in iron, which he agreed to accept in discharge of the debt, if he should collect the amount of the order. But that he hád never received more than two stoves on account of the order, and held Mason’s certificate acknowledging that hé had paid no more.
The bill is taken for confessed against Crocket, as a non-resident, on a certificate of publication. And the circuit court decreed a sale of the house and lot, to satisfy Brown’s debt; from which Humphreys has prosecutéd a writ of error.
It does riot appear whether Humphreys had notice of Brown’s equitable lien. On that ground, therefore, there could be no decree against Humphreys. Theré is no proof, however, that Crocket owed Humphreys; or if he did; how much; and the deed and order for the deed, could not be evidence against Brown. It is not stated that any price was agreed upon for the house and lot, between Crocket and Humphreys; The latter admits that he took the order on Mason. He does not state, that Mason did not owe the amount to Crocket; nor that he refused to accept the order; hdr that he was unable to discharge it; nor that Crocket ever had any notice, during ihé lapse of several years, of the non-payment by Mason; nor is the Valué of thé stoves mentioned; or accounted for.
It would seem, therefore; that under all these circurristances, Humphreys and not Crocket or his creditors, should loose the amount of the order, if it still be unsatisfied. Mason may have been solvent when the order was drawn; he may now be insolvent. Crocité! could not proceed against him whilst Humphreys held *394 the order. He had reason to suppose that the order had been paid; and it is very evident that he did think so; therefore, either the house and lot or the amount of the order, (on this state of facts) should be liable in equity, to Crocket’s debts.
The answer Of Price.
The publication against Crocket, not sufficient.
An appearance in tho court of appeals, waives the necessity of advertising, when cause remanded.
Haggin, for the plaintiffs; Hewett, for defendant.
Price admits the allegations of the bill, and insists on foreclosing his mortgage, unless Brown shall be entitled to precedence. Whether Brown or Price should be postponed, might depend, in some degree, on whether Price had any notice of Brown’s equity. But Price does not seem to resist the prayer of Brown for relief.
There would be no objection, therefore, to^ the decree, except toits form, if Crocket had been regularly before the court. But the publication against Crocket was not quite two months before the appearance day. The order was published first, on the 261 h day of May, 1826, and the first day of the next term was the 21st of July, 1826.
If it be proper to sell the house and lot, Humphreys should be required by the decree, to release.
For want of sufficient publication, the decree is reversed and the cause remanded for new proceedings against Crocket, and as he has appeared in this court, a further order of publication against him will be unnecessary, and for such final decree as shall be just and equitable on the final hearing between all the parties.